13 CIV 7714

JUDGE PAULEY

COPY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ERIKA NEWSOME, on behalf of herself and all others similarly situated,

Plaintiffs,

vs.

WAL-MART STORES, INC.

Defendant.

Case No. ________

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMAND

RECEIVED
OCT 31 2013
U.S.D.C. S.D. N.Y.
CASHIERS

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Erika Newsome brings this Class Action Complaint against Defendant Wal-Mart Stores, Inc. ("Wal-Mart" or "Defendant"), individually and on behalf of a proposed Class as defined herein. In support of Plaintiff's Class Action Complaint, she alleges the following, based on her personal experiences and the investigation of counsel:

## NATURE OF THE ACTION

1. Wal-Mart, like many large retailers and pharmacies, sells a private label brand of vitamins and drugs under its "Equate" label, including the two products at the center of this action, Equate Extra Strength Headache Relief ("Equate ES") and Equate Migraine Relief ("Equate Migraine").

2. Equate ES and Equate Migraine are, however, merely generic copies of Excedrin Extra-Strength ("Excedrin ES") and Excedrin Migraine, two well-known brand-name Over The Counter ("OTC") medications manufactured and sold by Novartis.

3. Critically, the pills contained in a bottle of Equate ES or Excedrin ES and those contained in a bottle of Equate Migraine or Excedrin Migraine are ***indistinguishable***: they

contain ***the same*** amount of ***the same*** active ingredients and, accordingly, have an identical effect on consumers who ingest them.

4. Despite the pills being identical, Defendant deceptively and falsely advertises and markets Equate Migraine as being a superior and more-potent drug for headache relief as compared to Equate ES. First, Defendant prominently features the word "Migraine" on the packaging and labeling of Equate Migraine and, additionally, states that the product is designed for the sole purpose of treating migraine headaches. As the millions of Americans who suffer from migraine headaches can attest, and as is commonly known among those who do not suffer from them, migraine headaches are a particularly severe form of headache that, in addition to severe pain, can also involve other symptoms such as nausea and photosensitivity.

5. Second, Defendant charges an enormous premium for Equate Migraine. While Defendant sells Equate ES for approximately $4.00 for 200 pills, it charges ***more than double*** that price, over $9.00, for the same quantity of Equate Migraine. This exorbitant price—in addition to being unjustified price inflation—further reinforces the deception because the vastly different price as compared to Equate ES suggests to the consumer that Equate Migraine is more potent or more effective when it is not.

6. Defendant's false, deceptive and misleading marketing and pricing of its Equate products, as described herein, has caused harm to consumers, including Plaintiff and the Class, in that they would not have purchased Equate Migraine or would, at a minimum, have paid less for the products they did purchase.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists between Plaintiff and the Class members, on the one hand, and Defendant, on the other, and the amount in controversy is greater than $75,000.

8. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2), because the proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendant, and the amount in controversy exceeds $5 million.

9. This Court has personal jurisdiction over Defendant Wal-Mart because Defendant has multiple store locations in the State of New York and because Defendant regularly transacts business within the State of New York.

10. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because Plaintiff and numerous Class Members reside in this District, were subjected to Defendant's misleading advertisements in this District, were induced through Defendant's advertisements to purchase Equate Migraine products in this District, and sustained damages in this District.

## PARTIES

11. Defendant is a Delaware corporation with headquarters at 702 SW 8th Street; Bentonville, Arkansas 72716.

12. Plaintiff is a resident and citizen of Bronx, New York. During the Class Period, Plaintiff was exposed to Defendant's advertising and packaging of the Equate products and purchased Equate Migraine in a 100-count bottle for $5.47. Plaintiff purchased Equate Migraine because it claimed to treat migraine headaches, from which Plaintiff's husband suffers and, additionally, because she reasonably believed, based upon the packaging and pricing of Equate Migraine, that it was a superior, more potent, product as compared to Equate ES.

## FACTUAL ALLEGATIONS

13. Since 1960, Excedrin ES has been sold for headache relief, combining acetaminophen, aspirin and caffeine. Excedrin ES was the first multi-ingredient formulation headache treatment product sold in the United States. Its formula changed for the last time in 1978 and contains 250 mg of acetaminophen, 250 mg of aspirin, and 65 mg of caffeine in each pill.

14. In 1997, Bristol-Myers Squibb sought approval from the FDA to include "migraine headaches" on the FDA-approved list of uses on the label of its Excedrin ES. The FDA approved the labeling change and Bristol-Myers Squibb created Excedrin Migraine, a separately packaged and labeled product which contains pills that are indistinguishable from those contained in a bottle of Excedrin ES.

15. In 1998, Excedrin Migraine, was introduced to the market. The active ingredients in Excedrin Migraine are the *same* as in Excedrin ES—250 mg of acetaminophen, 250 mg of aspirin, and 65 mg of caffeine in each pill. Indeed, Excedrin Migraine *must* contain identical active ingredients and have identical bioequivalence to Excedrin ES because its FDA approval relied entirely on previously published studies that proved Excedrin ES was useful in treating migraine headaches.

16. On or around 2002, Wal-Mart sought permission from the FDA to manufacture a generic version of Excedrin ES and Excedrin Migraine. To do so, Wal-Mart submitted two Abbreviated New Drug Applications ("ANDAs") to the United States Food and Drug Administration ("FDA") attesting that its Equate products would be identical to the Excedrin products, thus permitting Wal-Mart to rely upon the clinical studies and clinical trials conducted by Excedrin's manufacturer. Thus, Wal-Mart was able to bring its generic OTC drug to market at a sharply lower cost as compared to the original manufacturer (in this case, Bristol-Meyers Squibb), but only by assuring the FDA that its generic versions would be indistinguishable from the original brand-name pharmaceuticals. Wal-Mart received approval to sell its generic version of Excedrin ES and Excedrin Migraine (Equate ES and Equate Migraine) sometime around 2002.

17. A condition of seeking approval under the ANDA process, however, is that the generic product may not differ in any meaningful way from the originally approved product (in this case Excedrin ES). ***Thus, Equate ES is required, as a matter of law, to be pharmacologically identical to Excedrin ES. Likewise, Equate Migraine is required, as a matter of law, to be pharmacologically identical to Excedrin Migraine.*** Because Excedrin ES and Excedrin Migraine are identical it is also, therefore, true that Equate ES and Equate Migraine are pharmacologically identical.

18. Indeed, Defendant sells Equate ES and Equate Migraine in similar packages. Equate ES is packaged as shown below, noting that its active ingredients are identical to those contained in Excedrin ES. Notably, Equate markets Equate ES as a "Headache Relief" product.




19. Equate Migraine, also shown below, is packaged in a nearly identical way, using red (an emergency indicating color) rather than a green background and noting that its active ingredients are identical to those contained in Excedrin Migraine. Equate Migraine is marketed as a "Migraine Relief" product. It is well-known among the consuming public that migraine headaches are a more painful and debilitating form of headache.




20. By marketing the products in this way, Defendant creates the illusion that the pills contained in Equate Migraine are more potent than those contained in Equate ES, because Equate Migraine allegedly treats a more painful and debilitating condition—migraine headaches. By marketing the product with the term "Migraine Relief" in the product name, Defendant also conveys that the product is specifically formulated to treat the more severe migraine headache. These illusions are reinforced by the manner in which Wal-Mart displays Equate ES and Equate Migraine side-by-side on its shelves and in close proximity on the Walmart.com web site, suggesting that these are distinct formulations, rather than identical pills.

21. Having suggested to a potential consumer that Equate Migraine is somehow different, more effective, and more potent than Equate ES, Defendant further reinforces that fallacy through its pricing of the two products. Defendant charges customers more than a ***100%***

***premium*** for Equate Migraine. The screenshots below were taken from the Walmart.com web site on September 20, 2013, and show the prices Defendant charges consumers. First, Walmart.com indicates that two 100-count bottles of Equate ES sell for $4.00.




Then, Walmart.com sells the same pill count of Equate Migraine for $9.22, a markup in excess of 100% for pharmacologically indistinguishable products.




22. Defendant fails to conspicuously inform consumers, either on the labeling for Equate ES and Equate Migraine, on the shelves in its stores where the products are sold, or on the web site, that the products are pharmacologically indistinguishable.

23. Specifically, in 2013, Plaintiff purchased Equate Migraine based on the belief that it was a more potent and efficacious product than Equate ES.

24. As a result of Defendant's misrepresentations and false advertising and marketing, Plaintiff and other consumers suffered injury in fact and lost money or property.

25. Consumers, including Plaintiff and the Class, unknowingly relied on Defendant's false advertising and marketing in their purchase of Equate Migraine over Equate ES and other pain-relief medications on the market. But for the deceptive marketing and advertising described above, consumers, including Plaintiff and the Class, would not have purchased Equate Migraine or would have paid less for the product.

26. Defendant's misrepresentations and omissions were material to Plaintiff and other consumers. It would be economically irrational for a consumer to pay more than double for a bottle of Equate Migraine when it contains the *same* pills as the considerably less expensive bottle of Equate ES. Had the Class members known that Equate ES and Equate Migraine were identical, interchangeable products, they would not have purchased the more expensive Equate Migraine.

27. Accordingly, Plaintiff and other consumers suffered injury in fact and loss of money in the amount that they paid for Equate Migraine above and beyond what Defendant charged for the identical product, Equate ES.

## CLASS ALLEGATIONS

28. Plaintiff brings this action as a class action on behalf of herself and the Class consisting of:

> All persons and entities who, during the relevant Class Period, purchased Equate Migraine at a price in excess of the price of Equate ES.

29. Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or further division into subclasses or limitation to particular issues after discovery.

30. The Class satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Federal Rule of Civil Procedure 23(a) and (b)(3).

31. The members of the Class are so numerous that joinder of all members is impracticable. Although the precise number of Class members is unknown to Plaintiff at this time and can be determined only by appropriate discovery, it is reasonably estimated that the Class consists of at least tens of thousands, or hundreds of thousands of members who are geographically dispersed.

32. Because Plaintiff is a purchaser of Equate Migraine and has been subjected to Defendant's deceptive and misleading course of conduct, intended to trick, mislead and significantly confuse consumers, Plaintiff is a Class member and her claims are typical of the

claims of the Class members. The harm suffered by Plaintiff and all other Class members was and is caused by the same misconduct by Defendant.

33. Plaintiff will fairly and adequately represent and protect the interests of the Class, in that Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel, who are experienced in consumer and commercial class action litigation, to further ensure such protection and who intend to prosecute this action vigorously.

34. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it impossible for individual Class members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims was not available, Defendant would likely continue its wrongful conduct, would unjustly retain many hundreds of thousands or millions of dollars in improperly obtained revenues, or would otherwise escape liability for its wrongdoing as asserted herein.

35. Common questions of law and fact exist as to all members of the Class, which predominate over any questions that may affect individual Class members. Among the questions of law and fact common to the Class are the following:

a. whether Equate ES and Equate Migraine are identical products;

b. whether Defendant's deceptive marketing and pricing of the its Equate products caused reasonable consumers to pay more for Equate Migraine as opposed to Equate ES;

c. whether Defendant violated Section 349 of New York's General Business Law;

d. whether Defendant breached the implied covenant of good faith and fair dealing in its sales transactions with Plaintiff and the Class members;

e. whether Defendant received a benefit from Plaintiff and Class members and whether it would be unjust for Defendant to retain such benefit; and

f. the appropriate measure of damages, restitution, pre- and post-judgment interest, and/or other relief to which Plaintiff and the Class members are entitled.

36. The Class is readily definable and ascertainable, and prosecution of this action as a Class Action will reduce the possibility of repetitious litigation. Information concerning sales of Equate Migraine and Equate ES is available from Defendant's books and records, and by-products, receipts and other proofs of purchase maintained by Plaintiff and the members of the Class.

37. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a Class Action.

38. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for the Defendant in this action. Prosecution as a class action will eliminate the possibility of repetitious litigation.

39. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

**(Violation of New York General Business Law § 349)**

40. Plaintiff incorporates the above allegations by reference as if fully set forth herein.

41. Defendant's actions alleged herein constitute unlawful, unfair, and deceptive business practices. Those actions include misrepresenting that Equate Migraine is somehow more suited for relief of migraine headaches than Equate ES.

42. Defendant's conduct constitutes acts, uses and/or employment by Defendant or its agents or employees of deception, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations and/or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of goods in violation of Section 349 of New York's General Business Law.

43. Defendant's acts and omissions were generally directed at the consuming public.

44. Defendant's unfair and deceptive trade acts and practices have directly, foreseeably, and proximately caused damages and injury to Plaintiff and other members of the Class.

45. Defendant's violations of Section 349 of New York's General Business Law have damaged Plaintiff and other Class Members, and threaten additional injury if the violations continue.

46. Defendant's acts and omissions, including Defendant's misrepresentations regarding Equate Migraine, have caused harm to Class members in that Class members have paid higher prices for Equate Migraine medication than they would have paid for identical Equate ES.

47. Plaintiff, on her own behalf, and on behalf of the Class Members, seeks damages, injunctive relief, including an order enjoining Defendant's Section 349 violations alleged herein, and court costs and attorneys' fees, pursuant to NY Gen Bus. Law § 349.

## SECOND CAUSE OF ACTION
## (Breach of Contract)

48. Plaintiff incorporates the above allegations by reference as if fully set forth herein

49. The covenant to act in good faith and with fair dealing is implied and incorporated into every contract. This imposes upon each party to the contract a duty of good faith and fair dealing. The covenant is implied to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenant) frustrates the other party's rights of the benefits of the contract. A breach of a specific provision of the contract is not a necessary prerequisite to a breach of the implied covenant of good faith and fair dealing.

50. Defendant breached the implied covenant of good faith and fair dealing in its sales transactions with Plaintiff and the Class Members by marketing Equate Migraine to

consumers in a way that positioned it as a superior, more effective, product than Equate ES, when Defendant knew that Equate Migraine and Equate ES were identical products for which no price difference could be justified. Defendant's conduct frustrated the benefits Plaintiff and the Class Members received from the relevant sales transactions by causing Plaintiff and the Class Members to pay more money than necessary for Equate Migraine.

51. Plaintiff and the Class Members have sustained damages resulting from Defendant's breach of the covenant of good faith and fair dealing.

52. As a direct result of Defendant's breaches, Plaintiff and the Class Members seek restitution of monies they paid for Equate Migraine above and beyond the price then being charged by Wal-Mart for Equate ES.

## THIRD CAUSE OF ACTION
## (Unjust Enrichment)

53. Plaintiff incorporates the above allegations by reference as if fully set forth herein.

54. As a result of Defendant's misconduct in the form of unlawful marketing and pricing of its Equate Migraine products as set forth above, Defendant has received a benefit at the expense of Plaintiff and the Class members that would be unjust for Defendant to retain.

55. As a result of Defendant's unjust enrichment, Plaintiff and the Class Members are entitled to restitution, namely, the return of the financial benefit conferred by Plaintiff and Class members on Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, requests the following relief:

A. An order that this action may be maintained as a Class Action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff be appointed Class representative, and that Plaintiff's counsel be appointed as counsel for the Class;

B. A permanent injunction against Defendant, restraining, preventing and enjoining Defendant from engaging in the illegal practices alleged;

C. An order requiring Defendant to disgorge the profits wrongfully obtained through the use of its illegal practices;

D. An order requiring Defendant to pay restitution to Plaintiff and all members of the Class.

E. Actual damages;

F. Punitive damages;

G. An award of attorneys' fees;

H. An award of the costs of suit reasonably incurred by Plaintiff and her counsel;

I. An award of interest, including prejudgment interest, at the legal rate, and;

J. Such other and further relief as the Court deems necessary and appropriate.

Dated: October 28, 2013

Respectfully submitted,

**ZAREMBA BROWNELL & BROWN, PLLC**

By: ____________________

John Zaremba (3958)
Robert Corbett (RC5252)
40 Wall Street, 27th Floor
New York, NY 10005
Telephone: (212) 400-7224
jzaremba@zbblaw.com
rob@robcorbettlaw.com

Brian D. Penny (BP0718)
Douglas J. Bench, Jr.
**GOLDMAN SCARLATO KARON & PENNY, P.C.**
101 E. Lancaster Avenue, Suite 204
Wayne, PA 19087
Telephone: (484) 342-0700
penny@gskplaw.com
bench@gskplaw.com

*Counsel for Plaintiff and the Proposed Class*